## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-24378-CV-KING/MAYNARD
### CASE NO. 11-20613-CR-KING

**VLAIDIMIR LOUISSANT,**

    **Movant,**

vs.

**UNITED STATES OF AMERICA,**

    **Respondent.**

_____/

### REPORT OF MAGISTRATE JUDGE RECOMMENDING
### DENYING MOTION TO VACATE- 28 U.S.C. § 2255

### INTRODUCTION

Movant, **Vladimir Louissant** ("Movant"), filed this *pro se* motion to vacate, pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") [CV ECF No. 1] with supporting memorandum ("Memorandum") [CV ECF No. 3], challenging the constitutionality of his conviction and sentence for possession of a firearm in furtherance of a crime of violence resulting in death, in violation of 18 U.S.C. § 924(c), (j), entered following a guilty plea in **Case No. 11-20613-CR-KING.** For the reasons discussed below, Movant's § 2255 Motion should be **DENIED** as he is not entitled to habeas corpus relief.

This Cause has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) (1) (B), and Rules 8 and 10 Governing Section 2255 cases in the United States District Courts.

For its consideration of this § 2255 Motion [CV ECF No. 1],[1] with Memorandum [CV ECF No. 3], the Court has reviewed the government's response [CV ECF No. 9], together with the relevant pleadings filed in the underlying criminal case, of which this Court takes judicial notice. *See* Fed. R. Evid. 201; *Nguyen v. United States,* 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (citing *United States v. Glover,* 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)).

## CLAIMS

Construing the § 2255 motion liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (per curiam), Movant raises the following two grounds for relief:

1.  He is entitled to vacatur of his conviction and sentence in light of the United States Supreme Court's ruling in *United States v. Davis,* 139 S.Ct. 2319 (2019). [CV ECF No. 1 at 4; CV ECF No. 3 at 10].

2.  He was denied effective assistance of counsel, where his lawyer failed to file a motion to suppress Movant's pre-arrest statement on the basis that it was provided while under medical treatment, and obtained in violation of his *Miranda*[2] rights. [CV ECF No. 1 at 5; CV ECF No. 3 at 5].

## BACKGROUND

### A.   Stipulated Facts

The stipulated factual proffer reveals that, in August 2011, Movant and his friend, Reginald Mitchell ("Mitchell"), and others agreed and planned to commit an armed robbery of a Brinks money courier at the Calder Racetrack and Casino ("Calder Casino") in Miami, Florida where Mitchell worked. [CR ECF No. 242 at 1]. On August 21, 2011, Movant went to Mitchell's residence, at which time Mitchell handed him a silver revolver to use during the robbery, and

---

[1] Citations to [CV ECF No. ] refer to docket entries in this federal § 2255 proceeding, while citations to [CR ECF No. ] refer to the docket entries in the underlying criminal case under attack here.

[2] *Miranda v. Arizona,* 384 U.S. 436, 475-79 (1966).

where he met Victoria Barkley ("Barkley") and Byron Kyler ("Kyler"). [*Id.*]. Movant and Mitchell went with Barkley, who drove her Mazda to a Wal-Mart near the Calder Casino, while Kyler followed in his pick-up truck. [*Id.*]. At the Wal-Mart, Kyler exited his truck, remaining at the Wal-Mart, while Movant and Mitchell got into Kyler's pick-up and drove to Calder Casino to commit the robbery. [*Id.*]. Shortly thereafter, Kyler reported his pick-up stolen. [*Id.* at 1-2]. Meanwhile, Barkley drove to an access road behind the Calder Casino, where she would wait for Movant and Mitchell until they completed the robbery. [*Id.*].

When Mitchell arrived at the Calder Casino, he dropped Movant off at the front, advised Movant the Brinks courier was already inside the casino, and would be exiting shortly. [*Id.* at 2]. Movant sat on a bench near the casino door waiting for the courier to exit Calder Casino. [*Id.*]. As Movant saw the courier, he got up, running towards the courier with his gun drawn. [*Id.*]. A confrontation ensued, during which Movant killed the courier, Alvaro Lopez Ramos (the "victim"), shooting him twice in the head. [*Id.*]. Movant was shot once. [*Id.*].

Movant grabbed the money bag the victim had been carrying which contained approximately $345,000 in U.S. currency, and fled the scene with Mitchell in Kyler's truck. [*Id.*]. Mitchell and Movant drove to the access road, abandoned the pick-up truck, and got into Barkley's Mazda, who drove them first to Mitchell's house and then dropped Movant off at Memorial Hospital in Pembroke Pines. [*Id.*]. Mitchell then went shopping and gambling with the proceeds from the Calder Casino robbery. [*Id.*].

Meanwhile, Movant significantly obstructed and impeded the investigation of the Calder Casino robbery and murder, providing investigators a false exculpatory statement, claiming to have been shot while playing basketball at a park. [*Id.*]. Law enforcement agents expended substantial time and resources attempting to verify the truth of Movant's statement. [*Id.*].

Later, after being advised of and waiving his constitutional rights in writing, Movant provided a complete confession regarding his involvement in the armed robbery and murder. [*Id.*]. The armed robbery affected interstate commerce by interfering with the operations of Brinks, a secured transportation provider which operates in multiple states, delaying delivery of money to a bank which operates in multiple states, and causing Calder Casino, a business which serves customers traveling in interstate and foreign commerce, to close its doors for several hours, during which patrons were not permitted to enter or leave. [*Id.* at 2-3].

**B.     Indictment Through Guilty Plea**

Movant was charged by Superseding Indictment with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(b) (Count 1), Hobbs Act robbery, in violation of 18 U.S.C. § 1951(b) (Count 2), carrying and using a firearm during and in relation to a crime of violence, and possession of a firearm in furtherance of a crime of violence--violations of 18 U.S.C. § 1951(a) as set forth in Counts 1 and 2--in violation of 18 U.S.C. § 924(c) (1) (A) and 18 U.S.C. § 2 (Count 3), and carrying and using a firearm during and in relation to a crime of violence, and possession of a firearm in furtherance of a crime of violence--violations of 18 U.S.C. § 1951(a) as set forth in Counts 1 and 2--in violation of 18 U.S.C. § 924(c) (1) (A) and 18 U.S.C. § 2, and in the course of the violation, caused the death of Alvaro Lopez Ramos, a Brinks security guard, through use of a firearm, which killing was a murder under 18 U.S.C. § 1111, in violation of 18 U.S.C. §§ 924(c) (1) (A), 924(j) (1), and 2 (Count 4). [CR ECF no. 222]

On October 4, 2012, Movant appeared for a change of plea proceeding pursuant to Fla. R. Crim. P. 11. [CR ECF No. 360]. After being given the oath, Movant acknowledged and understood the charges as set forth in Count 4 of the Superseding Indictment. [*Id.* at 3]. Movant also understood that he faced up to a statutory maximum of a lifetime term of imprisonment, to be

followed by up to five years of supervised release as to Count 4, and a $250,000 fine. [*Id.*]. Movant next affirmed that he was satisfied with counsel's advice and representation. [*Id.*]. Movant confirmed that counsel had reviewed the facts and case with him. [*Id.* at 3-4]. Regarding the waiver of his constitutional rights, Movant understood that by pleading guilty he was waiving his right to a trial by jury, to call defense witnesses at trial, to cross-examine government witnesses, and to testify on his own behalf at trial. [*Id.*]. He denied being threatened or forced to enter a guilty plea. [*Id.* at 5].

In exchange for Movant's guilty plea as to Count 4, the government agreed to dismiss Counts 1 through 3 at sentencing. [*Id.* at 5]. The parties further agreed to the following guideline calculations: (1) that the base offense level is 43; (2) that he receive an obstruction of justice enhancement; and, (3) that he receive a three-level reduction to the base offense level based on Movant's timely acceptance of responsibility, resulting in an adjusted base offense level 42. [*Id.*]. Given the foregoing, Movant acknowledged he would be facing a guideline range of 360 months to a lifetime term of imprisonment. [*Id.*]. If the Court accepted the guilty plea, Movant further agreed to waive his right to prosecute a direct appeal. [*Id.*]. Other than the foregoing promises, Movant denied being made any other promises by anyone in order to induce him to plead guilty. [*Id.* at 6]. Movant indicated he was pleading guilty freely and voluntarily because he did, in fact, commit the crime as set forth in Count 4 which caused the death of a Brinks' courier. [*Id.*].

It appears Movant executed a six-page written plea agreement, as he confirmed it was his signature on that document. [*Id.* at 6-7]. However, a copy of that agreement could not be located on CM/ECF, the Court's electronic docket. Movant, however, acknowledged he was satisfied with the promises made to him, and with the terms set forth in the plea agreement. [*Id.* at 7]. After the government provided the Court with the facts to support the charged offense, as set forth in the

stipulated factual proffer, the Court found Movant had freely and voluntarily pleaded guilty with full knowledge of the consequences thereof. [*Id.* at 10]. The Court further determined there was sufficient proof, based on the stipulated facts to support a conviction if the case had been decided by a jury. [*Id.*]. As a result, the Court adjudicated Movant guilty as to Count 4 of the Superseding Indictment. [*Id.*].

## C.    Pre-Sentence Investigation ("PSI") to Judgment

Prior to sentencing, a PSI was prepared which set forth Movant's base offense level under U.S. Sentencing Guidelines Manual ("USSG") § 2A1.1 (U.S. Comm'n 2012). (PSI ¶ 23). A two-level enhancement to the base offense level was added under USSG § 3C1.1 for obstruction of justice. (PSI ¶ 27). Three levels were deducted from the base offense level pursuant to USSG § 3E1.1(a)-(b) based on Movant's timely acceptance of responsibility, resulting in a total adjusted base offense level 42. (PSI ¶¶ 30-32). The PSI next determined Movant had zero criminal history points, resulting in a criminal history category I. (PSI ¶ 35). Based on a total offense level 42 and a criminal history category I, the advisory guideline range was set at 360 months to a lifetime term of imprisonment. (PSI ¶ 70). Statutorily, Movant faced a minimum of ten years and up to a lifetime term of imprisonment for violation of 18 U.S.C. §§ 924(c) (1) (A) (iii) and 924(j) (1). (PSI ¶ 69).

On April 3, 2013, Movant was sentenced to a lifetime term of imprisonment. [CR ECF No. 324]. Movant appealed, and the Eleventh Circuit Court of Appeals vacated and remanded for resentencing because the trial court erred in failing to elicit objections after imposition of sentence as required by *United States v. Jones,* 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill,* 984 F.2d 1136 (11th Cir. 1993). *See United States v. Louissant,* 558 F. App'x 893 (11th Cir. 2014) (per curiam); [CR ECF No. 379].

Pursuant to the remand, on January 20, 2013, Movant was again resentenced to a lifetime term of imprisonment. [CR ECF No. 412]. Movant appealed, and the Eleventh Circuit Court of Appeals again reversed and remanded because the district court failed to comply with 18 U.S.C. § 3553(c) (1)'s requirement, offering "'no reason for the life sentence it elected to impose.'" *See United States v. Louissant,* 667 F. App'x 765 (11th Cir. 2016) (per curiam); [CR ECF No. 458].

Following the appellate court's remand, on May 31, 2017, the district court sentenced Movant to fifty years of imprisonment. [CR ECF No. 500]. Movant appealed, raising three claims of trial court error: (1) "for failing to state its reason for imposing a sentence at a particular point within the advisory guideline range"; (2) in basing Movant's sentence "on a clearly erroneous fact"; and, (3) in imposing a "substantively unreasonable sentence because the court focused solely on his role in the crime and failed to consider other mitigating factors." *See United States v. Louissant,* 745 F. App'x 112, 113 (11th Cir. 2018) (per curiam). On **August 10, 2018,** the Eleventh Circuit Court of Appeals *per curiam* affirmed the Movant's judgment in a written, but unpublished opinion. *Louissant,* 745 F. App'x at 114; [CR ECF No. 512].

For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case become final on **November 8, 2018,** when the ninety-day period for seeking certiorari review with the United States Supreme Court expired following conclusion of Movant's direct appeal following remand. *See Gonzalez v. Thaler,* 565 U.S. 134, 149-50 (2012); *Phillips v. Warden,* 908 F.3d 667, 672 (11th Cir. 2018). Thus, Movant had one year from the time his conviction became final, or no later than **November 8, 2019** to timely file this § 2255 Motion. See 28 U.S.C. § 2255(f) (1); *Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1986); *Downs v. McNeil,* 520 F.3d 1311, 1318 (11th Cir. 2008).

**D.      Section 2255 Motion**

Under the mailbox rule, Movant returned to this court, timely filing his § 2255 Motion with supporting Memorandum on **October 10, 2019,** the date he signed and them handed to prison authorities for mailing.[3] [CV ECF No. 1 at 13; CV ECF No. 3 at 10].

<u>**STANDARD OF REVIEW**</u>

**A.      Section 2255**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States,* 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

Relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Frady,* 456 U.S. 152, 165 (1982); *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). If a court finds a claim under § 2255 valid, the court shall vacate and set aside the judgment, and discharge the prisoner, grant a new trial, or correct the sentence. *See* 28 U.S.C. § 2255. The burden of proof is on Movant, not the Government, to establish that vacatur of the conviction or sentence is required. *Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017), *rehearing en banc denied*

---

[3]Under the prison mailbox rule, absent evidence to the contrary, like prison logs or other records, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *See* Fed. R. App. P. 4(c) (1) ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."); *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam).

by, *Beeman v. United States,* 899 F.3d 1218 (11th Cir. 2018), *cert. denied by, Beeman v. United States,* 139 S.Ct. 1168 (2019).

**B.      Guilty Plea Principles**

Because a guilty plea waives certain constitutional rights, before it is accepted, a district court must ensure that the waiver is a voluntary, knowing, and intelligent act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *United States v. Ruiz,* 536 U.S. 622, 629 (2002). To be knowing and voluntary: (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty,* 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam).

After the plea has been entered, a criminal defendant may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only: (1) raise jurisdictional issues, *United States v. Patti,* 337 F.3d 1317, 1320 (11th Cir. 2003); (2) attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *Wilson v. United States,* 962 F.2d 996, 997 (11th Cir. 1992) (per curiam); or, (3) challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam). Thus, a voluntary and intelligent plea of guilty, made by an accused person, must stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. *Brady v. United States,* 397 U.S. 742, 753-57 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea

under the Due Process Clause. *See Santobello v. New York,* 404 U.S. 257, 265 (1971) (Douglas, J. concurring).

## C.   Ineffective Assistance of Counsel Principles

Regarding claims challenging counsel's effectiveness, the law is well settled that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. *Lee v. United States,* 137 S. Ct. 1958, 1964 (2017). Where a movant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). However, if the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Strickland,* 466 U.S. at 697.

To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). In the guilty plea context, to show prejudice, the movant must establish that, but for counsel's deficient performance, "there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial." *See Hill,* 474 U.S. at 59. Prejudice in the sentencing context requires a showing that the sentence would have been less severe. *Glover v. United States,* 531 U.S. 198, 203-04 (2001). A movant, however, is not prejudiced by counsel's failure to raise non-meritorious claims. *Hittson v. GDCP Warder*, 759 F.3d 1210, 1262 (11th Cir. 2014). Courts may not vacate a conviction or sentence solely because the outcome would have been different, but for counsel's error, as it may grant the defendant a windfall to which the law does not entitle him. *Lockhart v. Fretwell,* 506 U.S. 364, 369-70, (1993); *Allen v. Sec'y, Fla. Dep't of Corr.,* 611 F.3d 740, 754 (11th Cir. 2010).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail. . . are few and far between." *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000). The *Strickland* test does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Sec'y for Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007). In retrospect, where a decision by counsel appears to have been unwise, it will have been ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it." *Dingle,* 480 F.3d at 1099 (citations omitted).

A meritorious claim of ineffective assistance of counsel can also constitute cause for a procedurally defaulted claim. *See United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly raised by way of a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503 (2003); *United States v. Patterson,* 595 F.3d 1324, 1328 (11th Cir. 2010).

## **DISCUSSION**

A.     *Davis* **Claim**

In **claim 1,** Movant asserts he is entitled to vacatur of his conviction and sentence in light of *Davis* which invalidated § 924(c) (3) (B)'s residual clause. [CV ECF No. 1 at 4; CV ECF No. 3 at 10]. Movant claims it was not his "intent to kill the victim but to defend himself from harm" which resulted in the death of the Brinks courier. [CV ECF No. 3 at 2]. Movant claims his "reckless behavior" resulting in a death does not constitute a "crime of violence" post-*Davis*. [*Id.* at 3]. He maintains the Government relied upon the now invalidated § 924(c) (3) (B) residual clause to

support his § 924(c) conviction and sentence. [*Id.* at 4]. Therefore, he is entitled to *Davis* relief. [*Id.*].

      1.    *Procedural Default*

The Government argues that Movant procedurally defaulted his *Davis* claim as to his § 924(c) conviction and sentence because a "vagueness objection" to the court's reliance on the residual clause could have been, but was not raised at sentencing or on direct appeal. [CV ECF No. 9 at 5-8].

Pursuant to the procedural default rule, a prisoner may move the sentencing court to vacate his sentence under 28 U.S.C. § 2255 on the ground that his sentence was imposed in violation of federal law or the Constitution or exceeds the maximum time allowed by law. *See* 28 U.S.C. § 2255(a). However, "a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *United States v. Frady,* 456 U.S. 152, 165 (1982) (collecting cases)).

As such, general rules have developed that: "(1) a defendant must assert all available claims on direct appeal," and (2) "relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn,* 365 F.3d at 1232 (quotations and internal citations omitted).

When a claim is not pursued on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish objective cause for the default and actual prejudice resulting from the alleged constitutional violation. *Massaro v United States,* 538 U.S. 500, 504 (2003); *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000).

(a)    **Cause.** Cause for not raising a claim can be shown when a claim "is so novel that its legal basis was not reasonably available to counsel." *Rose v. United States,* 738 F. App'x 617, 626 (11th Cir. 2018) (per curiam) (quoting *Bousley v. United States,* 523 U.S. 614, 622 (1998)). Contrary to the Government's argument here, the Eleventh Circuit has made clear that where the United States Supreme Court invalidates as unconstitutional the residual clause as it did in *Johnson* and then *Davis,* overruling its own prior precedents on the exact issue, Movant could not have had "'a reasonable basis' upon which to raise a vagueness challenge to the residual clause'" at any time prior to his conviction becoming final. *See Rose,* 738 F. App'x at 626-28 (quoting *Reed v. Ross,* 468 U.S. 1, 17 (1984)). As applied, Movant has shown cause to exclude the procedural default, suggesting that his *Davis* claim was previously unavailable. [CV ECF No. 3].

Further, the government's procedural default argument is foreclosed by *In re Hammoud*. *See In re Hammoud,* 931 F.3d 1032, 1040 (11th Cir. 2019) (per curiam).  In *Hammoud,* the Eleventh Circuit reviewed and granted an application to file a successive § 2255 motion, finding that the applicant's *Davis* claim met the § 2255(h) (2) requirements. *In re Hammoud,* 931 F.3d at 1040. This necessarily means that Movant's *Davis* claim was, in fact, previously unavailable before 2019.[4]

Because the claim was previously unavailable to him, and it was not "reasonably available to counsel" at the time of his direct appeal," Movant has demonstrated cause to excuse the procedural default of the claim. *In re Hammoud,* 931 F.3d at 1040; *Lynn,* 365 F.3d at 1232 (citing *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam)).

---

[4]The Eleventh Circuit has previously explained that an argument is "novel" where "a court has articulated a constitutional principle that has not been previously recognized but which has been held to have retroactive application," and "must be a sufficiently clear break with the past, so that an attorney representing the defendant would not reasonably have had the tools for presenting the claim. . . ." *See Howard v. United States,* 374 F.3d 1068, 1072 (11th Cir. 2004) (internal quotations and citations omitted).

(b)      **Prejudice.** Having shown cause to excuse the procedural default, Movant must also demonstrate prejudice to warrant habeas corpus relief. To demonstrate prejudice arising from the procedural default, Movant must show "not merely that the errors at trial [or sentencing] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." *Brown v. United States,* 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *Frady,* 456 U.S. at 170). Movant must demonstrate that there is a reasonable probability that but for the error, his conviction or sentence would have been different. *See Mincey v. Head,* 206 F.3d 1106, 1147 (11th Cir. 2000) (holding that the showing of prejudice necessary to overcome a procedural default is the same showing of prejudice required by *Strickland v. Washington* 466 U.S. 668, 687, 694 (1984)). An erroneous sentence under § 924(c) "affect[s] the defendant's substantial rights and seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Mays v. United States,* 817 F.3d 728, 737 n.12 (11th Cir. 2016) (per curiam) (citations omitted). Such an illegal sentence may warrant habeas corpus relief. *Mays,* 817 F.3d at 737 n.12.

Thus, if Movant has suffered an "illegal sentence" on any count of conviction, he has sufficiently suffered alleged actual prejudice as a matter of law and habeas corpus relief may be warranted. *Mays,* 817 F.3d at 737 ("An illegal sentence warrants habeas corpus relief where a sentencing error 'affects the defendant's substantial rights and seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'") (citing *United States v. Sanchez,* 586 F.3d 918, 930 (11th Cir. 2009) (holding that an error in a sentence above the statutory maximum meets even the plain error standard) (internal quotation marks omitted)).

The Government argues Movant cannot demonstrate prejudice arising from the procedurally defaulted claim because Movant's §§ 924(c), (j) conviction as to Count 4 was

predicated both on Hobbs Act conspiracy (Count 1) **and** Hobbs Act robbery (Count 2). [ECF No. 9 at 8]. As discussed more fully below, the Government argues correctly that, because Hobbs Act robbery is a "crime of violence" under § 924(c)'s elements clause, the Movant cannot demonstrate prejudice, citing *In re St. Fleur,* 824 F.3d 1337, 1340-41 (11th Cir. 2016). [*Id.*].

   2.   *Fundamental Miscarriage of Justice*

Even absent a showing of cause and prejudice, under exceptional circumstances, Movant may also obtain federal review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Bousley,* 523 U.S. at 622. "Actual innocence" means factual innocence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623. For the reasons discussed below, Movant cannot demonstrate that a fundamental miscarriage of justice will result from the procedural default of his *Davis* claims because he has not shown he is factually innocent of the § 924(c) offense as charged in Count 4.

   3.   *Merits*

Movant argues that he is entitled to relief because he was sentenced under § 924(c) (3) (B)'s residual clause. [CV ECF No. 3]. The Government disagrees. [CV ECF No. 9]. The Government concedes that *Davis* invalidated § 924(c) (3) (B)'s residual clause, but argues that Movant is not entitled to relief because Hobbs Act robbery remains a "crime of violence" under § 924(c) (3) (A)'s elements clause. [ECF No. 32 at 4]. The Government's argument is correct in this regard, and Movant is not entitled to relief on this claim. Therefore, the claim remains procedurally defaulted.

(a)      *Applicable Law Re § 924(c)*

"To prove an offense under 18 U.S.C. § 924(c) (1) (A), the government must establish that a defendant used or possessed a firearm in relation to an in furtherance of a 'crime of violence' or a 'drug trafficking crime.'" *United States v. Duhart,* 803 F. App'x 267, 267 (11th Cir. 2020) (quoting 18 U.S.C. § 924(c) (1) (A)). Section 924(c) provides for a mandatory consecutive sentence for any defendant who uses or carries a firearm during and in relation to, or possesses a firearm in furtherance of, either "a crime of violence" or "drug trafficking crime." 18 U.S.C. § 924(c) (1) (A).

For purposes of § 924(c) (3), a "crime of violence" means an offense that is a felony and

(A)      has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)      that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*See* 18 U.S.C. § 924(c) (3) (A)-(B). Subsection (A) above is commonly referred to as the "elements clause," and subsection (B) is commonly referred to as the "residual clause," which was found unconstitutionally vague by *Davis*. *See Davis,* 139 S.Ct. at 2336. Although § 924(c) (3) (B)'s residual clause was invalidated in *Davis,* the United States Supreme Court left intact § 924(c) (3) (A)'s elements clause. *See Walker v. United States,* 796 F. App'x 702, 703 (11th Cir. 2020) (per curiam) (citing *Brown,* 942 F.3d at 1075).

Under § 924(c), a defendant need not be "convicted of, or even charged with, the predicate offense. *Duhart,* 803 F. App'x at 267 (citing *United States v. Frye,* 402 F.3d 1123, 1127 (11th Cir. 2005) (per curiam)). Instead, § 924(c) requires only that the predicate crime be one that may be prosecuted. *See In re Navarro,* 931 F.3d 1298, 1302 (11th Cir. 2019) (citing *Frye,* 401 F.3d at 1127; 18 U.S.C. § 924(c) (1) (A)). Thus, the use or carry a firearm must be in relation to a "crime

of violence" **or** "a drug trafficking crime." *Navarro,* 931 F.3d at 1302 (citing *Frye,* 402 F.3d at 1128).

The Eleventh Circuit instructs that courts "may refer to a defendant's indictment, plea agreement, plea colloquy, and attendant factual proffer" to determine which predicate offense underlies the § 924(c) conviction. *See Duhart,* 803 F. App'x at 267 (citing *Navarro,* 931 F.3d at 1302) (rejecting *Davis* claim, finding defendant's factual proffer established § 924(c) conviction predicated on drug trafficking crime).

(b)    *Discussion*

**(i)    Legal Sufficiency Re § 924(c)**. It is now well settled that that "conspiracy to commit Hobbs Act robbery is not categorically a crime of violence under § 924(c) (3) (A)'s elements clause because the statutory elements of Hobbs Act conspiracy do not require the existence of a threat or attempt to use force." *See Floyd v. United States,* 803 F. App'x 385, 386 (11th Cir. 2020) (per curiam) (citing *Brown,* 942 F.3d at 1075 (holding conspiracy to commit Hobbs Act robbery does not qualify as a "crime of violence" under § 924(c)'s elements clause and thus would only qualify under § 924(c)'s residual clause found unconstitutional in *Davis*)). Thus, Hobbs Act robbery conspiracy no longer qualifies as a predicate crime of violence to support Movant's § 924(c), (j) conviction as charged in Count 4.

However, any such error was harmless, because Movant agreed that his offense was also supported by Hobbs Act robbery, as charged in Count 2, which remains a qualifying predicate crime of violence offense under § 924(c) (3) (A)'s elements clause.[5] *See Stamps v. United States,*

---

[5]At his change of plea proceeding, Movant agreed he was pleading guilty to Count 4, charging him with knowingly using and carrying a firearm in furtherance of the Hobbs Act robbery, as charged in Count 2. [CR ECF No.360]. Count 2 of the Superseding Indictment charged Movant with Hobbs Act robbery by taking U.S. currency and property from the presence and custody of a Brinks security guard at Calder Casino, against that person's will and by means of actual and threatened force, violence, and fear of injury to such person, in violation of 18 U.S.C. § 1951(a) and 2. [CR ECF No. 222]. Movant acknowledged and agreed that Mitchell gave him a silver revolver which he used during the robbery, shooting the Brinks guard twice in the head. [CR ECF No. 242 1-2]. Movant also agreed that after he shot the Brinks

No. 19-14744, 812 F. App'x 871, 873 (11th Cir. May 1, 2020) (per curiam) (re-affirming that Hobbs Act robbery is a "crime of violence" under § 924(c) (3) (A)'s element clause) (citing *In re St. Fleur,* 824 F.3d at 1340-41 (Hobbs Act robbery is a crime of violence under § 924(c)'s elemental cause) and *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018), *cert. denied* 139 S.Ct. 1394 (2019)); *In re Hines,* 824 F.3d 1334, 1337 (11th Cir. 2016), *pet. cert. filed by* No. 20-5873 (U.S. S. Ct. Oct. 2, 2020).

Thus, Movant's companion Hobbs Act robbery conviction, as charged in Count 2, used to support his § 924(c), (j) conviction and sentence as to Count 4, qualifies as a "crime of violence" under § 924(c) (3) (A)'s element's clause. Therefore, Movant's argument to the contrary now fails. Consequently, Movant is not entitled to *Davis* relief on his § 924(c) conviction. *See Beeman,* 871 F.3d at 1221-22.

(ii)    **Factual Innocence of § 924(c) Conviction.** To the extent Movant means to argue that he is actually innocent as to his § 924(c) conviction, that claim warrants no federal habeas corpus relief. For the reasons discussed above, Movant cannot prevail on an actual innocence claim. He has not demonstrated that he is factually innocent of the § 924(c) conviction. *See Johnson v. Fla. Dep't of Corr.,* 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley,* 523 U.S. at 623). "'Actual innocence claims must be supported with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.'" *Rich v. Dep't of Corr. State of Fla.,* 317 F. App'x 881, 882 (11th Cir. 2008) (per curiam) (quoting *Schlup v. Delo,* 513 U.S. 298, 303 (1995)).

---

guard, he took the bag of money and fled with Mitchell. [*Id.* at 2]. Movant admitted he did, in fact, commit the crime as charged in Count 4, and did not dispute executing the factual proffer, nor did he contest the Government's statement of facts at the change of plea proceeding. [*Id.*  at 7-9]. On this record, it is evident that Movant understood his § 924(c) conviction was based on a Hobbs Act robbery, as charged in Count 2.

Movant has not met his burden of proof by presenting evidence of factual innocent here. Instead, his claim is one of legal insufficiency--that the § 924(c) is unconstitutionally vague. Movant entered into a knowing and voluntary guilty plea. He has not presented sufficient evidence to undermine the court's confidence in the outcome of his criminal proceedings. *See Milton v. Sec'y, Dep't of Corr.,* 347 F. App'x 528, 531-32 (11th Cir. 2009) (per curiam). Thus, this claim warrants no relief.

**B.      Remaining Claim-Ineffective Assistance of Counsel Regarding Pre-Plea Advice**

Movant asserts that counsel was ineffective for failing to file a motion to suppress Movant's statements to law enforcement on the basis that they were obtained in violation of his *Miranda* rights. The record shows that Movant was interviewed twice by law enforcement while he was at the hospital due to the gunshot wound he sustained during the robbery. [CR ECF No. 180 at 2-4; CR ECF No. 214 at 3]. During the first interview, Movant told federal agents that he was shot while playing basketball at the park. [CR ECF No. 214 at 3]. Four hours later, agents talked to Movant again. [*Id.*]. This time, Movant was given a *Miranda* form, which he signed. [*Id.*]. During the second interview, Movant admitted his involvement in the robbery. In **claim 2**, Movant says defense counsel should have filed a motion to suppress his statements to law enforcement because he was in the hospital receiving medical treatment when the statements were made. [CV ECF No. 1 at 5; CV ECF No. 3 at 5]. Petitioner claims he was sedated from the medications, in a vulnerable state and easily coerced. [*Id.*]. He was not thinking rationally and could not comprehend the waiver form he signed. [*Id.*]. He also complains that he was interviewed without counsel present. [*Id.*].

Prior to the change of plea, however, Movant's lawyer filed a detailed motion to suppress Movant's statements raising several arguments, including the points Movant now advances in his

Section 2255 Petition.  [CR ECF No. 180].  Specifically, counsel argued that Movant was unable to understand the *Miranda* rights that were given before his second statement to law enforcement because he was sedated with narcotic pain medication, suffering from blood loss, had significant pain from a gunshot wound, and had borderline intellectual capabilities.  [*Id.* at 2-3, 6, 8-9]. Counsel made similar arguments with respect to Movant's first statement to law enforcement, which Movant provided to law enforcement while at the hospital before receiving pain medications.  [CR ECF No. 214 at 6].

The magistrate judge held an evidentiary hearing on counsel's motion to suppress.  [CR ECF No. 214].  The emergency room physician who treated Movant at the hospital testified at the hearing.  He stated that Movant received morphine for pain and Zofran for nausea at approximately 8:30 pm on August 21, 2011. [CR ECF No. 210 at 92].  The physician testified that, both before and after receiving the medications, Movant appeared to be oriented as to person, time and place and did not appear to be dazed, confused or incoherent.  [*Id.* at 93].  Based upon Movant's age and weight, the medications he received would be adequate to control his pain but would not cause other significant side effects.  [*Id.* at 94-95].  Further, since the medications were given at 8:30 pm, there would not be much residual effect after midnight when he was interviewed because the duration of the medications was "two to four, maybe five" hours.  [*Id.* at 95].  Defense counsel tendered an expert witness in neuropsychology whom the magistrate judge described as having "impressive" background in his field.  [CR ECF No. 214 at 3-4; CR ECF No. 210 at 46-89].  The expert testified that Movant was not malingering, had been subjected to childhood abuse and had difficulty understanding the language of *Miranda* warnings.  [CR ECF No. 210 at 52-56, 65-66]. Other testimony and evidence were presented to the Court.  *See* [*Id.* at 12, 106].

Noting that Movant's first interview occurred before he was medicated, the magistrate judge concluded that Movant was not in custody during the first interview and therefore *Miranda* was not required.  [CR ECF No. 214 at 6].   As to the second interview, which occurred approximately four hours after Movant received medications, the magistrate judge concluded that Movant had the ability to understand and waive his *Miranda* rights despite receiving medications that included morphine.  [*Id.* at 6-7].   A Report was entered recommending that the motion be denied.  [CR ECF No. 214 at 6, 8].   No ruling on the Report was entered, as Movant pleaded guilty approximately a month later.  [CR ECF Nos. 241-242].

**Claim 2** fails for several reasons.  First, contrary to Movant's assertion, defense counsel did in fact file a motion to suppress Movant's statements to law enforcement based on Movant's alleged inability to understand due to medications he had received.  Counsel cannot be deemed ineffective for failing to do something that he did in fact do.  Counsel's motion was vigorously litigated but ultimately unsuccessful.  Movant cannot now use an ineffective assistance of counsel claim as a means to relitigate that determination.  Movant has not demonstrated that the Court's rejection of the suppression motion was error, much less that counsel's failure to raise further argument as suggested here would have affected the Court's recommendation to deny the suppression motion. Thus, he has not established deficiency or prejudice under Strickland.

 Second, to the extent Movant now claims he was on medication when he gave his first statement to law enforcement (which Movant describes in his Petition as his "pre-arrest" statement), that factual assertion is refuted by the record.   Counsel has no duty to raise non-meritorious issues.  *See Broderick v. United States*, No. 20-11612-F, 2020 WL 6280808, at *1 (11th Cir. Aug. 13, 2020) (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (same); *United States v. Hart*, 933 F. 2d 80, 83

(1st Cir. 1991) (explaining counsel is not required to waste the court's time with futile or frivolous motions).

Third, even if, as suggested, counsel failed to argue that the statements violated *Miranda* because they were obtained without counsel's presence, such an ineffectiveness claim was waived by Movant's knowing and voluntary guilty plea. Where – as here – a defendant pleaded guilty, a collateral attack based on ineffective assistance of counsel claim is permitted only to the extent that the defendant challenges the knowing and voluntary nature of his plea. *See Baird v. United States,* 445 F. App'x 252, 254 (11th Cir. 2011); *see also Bullard v. Warden, Jenkins Corr. Ctr.,* 610 F. App'x 821, 824 (11th Cir. 2015) (a knowing and voluntary plea of guilty waives all non-jurisdictional defects including any claim of ineffective assistance of counsel, unless the deficient performance relates to the voluntariness of the plea itself). Here, Movant has not alleged, let alone demonstrated, that his plea was anything other than knowing and voluntary.[6] This is fatal to his

---

[6] Briefly, to ensure that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *Patti,* 337 F.3d at 1320; *United States v. Moriarty,* 429 F.3d 1012, 1019 (11th Cir. 2005) (citing *United States v. Jones,* 143 F.3d 1417, 1418-19 (11th Cir. 1998) (per curiam). Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. Where, as here, Movant made statement under oath at the change of plea proceedings, "he bears a heavy burden to show his statements were false." See *United States v. Caldwell,* 805 F. App'x 743, 746 (11th Cir. 2020) (per curiam) (quoting *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam) (explaining a defendant bears a heavy burden to show that his statements under oath were false)).As narrated above, Movant acknowledged understanding the nature of the charges as to Count 4, and discussing the case with his attorney prior to changing his plea. [CR ECF No. 360 at 3, 4]. Movant further affirmed he was satisfied with the advice and services provided to him by counsel. [*Id.* at 3-4]. Movant affirmed he signed a negotiated, written plea agreement [*Id.* at 6-7]. Movant also executed a stipulated factual proffer. [CR ECF No. 242]. Regarding the waiver of his constitutional rights, Movant understood and accepted that he was waiving his right to a jury trial, including the right to confront witnesses, to cross-examine witnesses, to remain silent or testify on his own behalf at trial, and to call witnesses to testify and present evidence. [CR ECF No. 360 at 4-5]. Movant also understood that he had agreed to waive his right to a direct appeal. [*Id.* at 4]. Regarding his sentence exposure, Movant understood he faced up a statutory lifetime term of imprisonment. [*Id.* at 3]. Movant denied being

claim. By entering an knowing and voluntary plea, Movant has waived any claim that counsel was ineffective for failing to challenge his pre-arrest statement on the basis that it was made without the presence of an attorney. *See, e.g., Edwards v. United States*, No. 17-10322-D, 2018 WL 3586866, at *1 (11th Cir. June 4, 2018) ("By pleading guilty, a defendant waives any ineffective assistance of counsel claim as it involved pre-plea issues."); *Bullard*, 610 F. App'x at 824 (holding claim that counsel failed to file a motion to suppress is waived by guilty plea because he did not claim that his plea was involuntary).

Fourth, the prejudice prong of *Strickland* requires Movant to demonstrate that, but for counsel's errors or misadvice he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 56-59; *Brown,* 752 F.3d at 1347. Movant has not alleged that he would have insisted on proceeding to trial, but for counsel's purported ineffectiveness. This also is fatal to Movant's claim.

Lastly, such a bare, conclusory allegation of ineffective assistance is insufficient to satisfy the *Strickland* test. *See Boyd*, 697 F.3d at 1333-34; *Garcia v. United States*, 456 F. App'x. 804, 807 (11th Cir. 2012) (per curiam) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)). Given all of the foregoing, Movant cannot prevail on **claim 2** and no relief is warranted.

## CAUTIONARY INSTRUCTION RE *CLISBY*[7] RULE

The Court is mindful of the *Clisby* rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied.

---

forced or coerced into changing his plea and affirmed that the negotiated written plea agreement contained the entire agreement entered into with the government. [*Id.* at 4-5]. Movant affirmed pleading guilty freely and voluntarily because he was, in fact, guilty as to Count 4. [*Id.* at 6]. From this record, it is clear Movant understood the facts and the elements of the offense upon which the charge rested, and that his plea was knowing and voluntary.

[7]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

*Clisby v. Jones*, 960 F.2d at 936-36; *Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009) (per curiam) (holding that *Clisby* applies to § 2255 proceedings)). However, nothing in *Clisby* requires consideration of claims or arguments raised for the first time in objections. Therefore, if Movant attempts to raise arguments or further factual support for statutory or equitable tolling in objections, the court should exercise its broad discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance. *See Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009) (citing *Stephens v. Tolbert,* 471 F.3d 1173, 1175 (11th Cir. 2006) (per curiam) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)).

## EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on Movant to establish the need for a federal evidentiary hearing. *See Jones v. Sec'y, Fla. Dep't of Corr.,* 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a movant to relief. *Jones,* 834 F.3d at 1318-19 (quoting *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007)). Even when considering the alleged facts as true, no evidentiary hearing is required because the facts are fully developed in the record before this Court. *See Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his § 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See Jackson v. United States,* 875 F.3d 1089, 1090 (11th Cir. 2017) (per curiam) (citing 28 U.S.C. § 2253(c) (1)). A district court should issue a certificate of appealability only if Movant makes "a

- 24 -

substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c) (2). Where a district court has rejected Movant's constitutional claims on the merits, Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, Movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484. Movant fails to make "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c) (2). If Movant does not agree, he may bring his arguments to the attention of the district judge in objections.

## CONCLUSIONS

**ACCORDINGLY**, this Court recommends to the District Court that:

1.  Movant's § 2255 motion be DENIED;

2.  A certificate of appealability be DENIED;

3.  Judgment be entered in favor of Respondent; and,

4.  The case be CLOSED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a de novo determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28

U.S.C. § 636(b) (1) (C); *see also Harrigan v. Metro-Dade Police Dep't Station #4,* 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this _____9th_____ day of December, 2020.

_____

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

cc:
Vlaidimir Louissant, *Pro Se*
Reg. No. 95451-004
U.S.P. - Terre Haute
Inmate Mail/Parcels
Post Office Box 33
Terre Haute, IN 47808

Michael E. Gilfarb, AUSA
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
Email: Michael.Gilfarb@usdoj.gov